UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TAMI GEBHARD,** | ) |
| Plaintiff, | ) Case No. 1:15-cv-00487-JE |
| v. | ) **OPINION AND ORDER** |
| **CAROLYN W. COLVIN**, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

Tim Wilborn
WILBORN LAW OFFICE, P.C.
P.O. Box 370578
Las Vegas, NV 89137
      Attorney for Plaintiff

Billy J. Williams
United States Attorney
Janice E. Herbert
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

Gerald J. Hill
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075
    Attorneys for Defendant


**Jelderks, Magistrate Judge**:

    Plaintiff Tami Gebhard (plaintiff) seeks judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Because the Commissioner's decision is supported by substantial evidence, the decision is **AFFIRMED**.

## Procedural Background

    Plaintiff protectively filed an application for SSI on August 10, 2011.  Tr. 181-84.  Her application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge (ALJ).  On June 4, 2013, a hearing was held before ALJ R. J. Payne.  Tr. 33-70.  On June 20, 2013, ALJ Payne issued a decision finding plaintiff not disabled.  Tr. 10-26.  The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final order of the Commissioner.  Tr. 1-5.  This appeal followed.

## Background

    Plaintiff was born in August, 1965 and was therefore a "younger individual" under the Regulations on her alleged onset date of May 4, 2011.  She completed high school and phlebotomy training through Vocational Rehabilitation, and is able to communicate in English.  She alleges disability due to depression, anxiety, personality disorder, abdominal pain and

nausea status post multiple abdominal surgeries, degenerative disc disease, bilateral carpal tunnel syndrome, tendinitis, left shoulder injury, ganglion cyst of the right wrist, and sleep apnea.

## Disability Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 724 (9th Cir. 2011); see also 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the

Page 3 – OPINION AND ORDER

        impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.R.F. §§ 404.1520(a)(4)(v); 404.1560(c). If the claimant cannot perform such work, he or she is disabled.

Id. See also Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. Id. at 953; see also Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); Yuckert, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. Tackett, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy "taking into consideration the claimant's residual functional capacity, age, education, and work experience." Id.; see also 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. Bustamante, 262 F.3d at 953-54; Tackett, 180 F.3d at 1099.

/////

/////

Page 4 – OPINION AND ORDER

**Medical Record and Plaintiff's Statements**

**I.      Medical Evidence**

At the Commissioner's request, plaintiff underwent a comprehensive psycho-diagnostic consultative examination with Thomas Shields, Ph.D., on February 7, 2011, and April 19, 2011. Tr. 360.  Dr. Shields diagnosed depressive disorder NOS, cannabis dependence, history of methamphetamine dependence, nicotine dependence, and personality disorder NOS.  Tr. 365. Dr. Shields opined that plaintiff's physical problems impacted her ability to sustain full-time work but also noted that he was "not qualified to comment on [her] physical health."  He noted that plaintiff's depression was "modestly controlled" with medication, though not entirely remitted.  He did not note any significant impairment in attention, concentration, or memory functioning, and found that plaintiff appeared "capable of understanding, remembering, and carrying out simple instructions."  Id.

State Agency psychologist Joshua Boyd, Psy.D., reviewed plaintiff's medical file on April 22, 2011.  Tr. 76-78.  Dr. Boyd opined that plaintiff suffered mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no repeated episodes of decompensation. Tr. 77.  He found that plaintiff was limited to simple, routine tasks due to moderate limitations in her ability to understand and remember detailed instructions.  Tr. 80.  He also noted that plaintiff can be distracted by others, exhibits periodic pain behavior, and requires regular supervision to ensure workplace productivity.  Tr. 81.  Dr. Boyd also opined that plaintiff had moderate limitations in her ability to get along with coworkers and peers, and limited her to "no more than occasional public contact and no more than required interaction" with co-workers.  Tr. 81.

State Agency consultative physician Bill Hennings, Ph.D., also reviewed plaintiff's medical record to assess her functional capacity. On October 31, 2011, he opined that plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decomposition. Tr. 93. Dr. Hennings found that plaintiff had only mild social limitations, and moderate limits in her ability to interact appropriately with the general public. Tr. 97.

On March 8, 2012, consultative physician Paul Rethinger, Ph.D., reviewed the record and concurred with Drs. Hennings and Boyd in his assessment of plaintiff's functionality. Tr. 110.

On February 7, 2012, treating nurse practitioner Mason Harrison, FNP, completed a functional limitations questionnaire. Tr. 447-48. He found that plaintiff could frequently lift or carry only 0 to 5 pounds, had limited fine manipulation skills, and could walk, stand, and sit for 2 hours or less in an 8-hour workday. Id.

At the hearing, the ALJ took testimony from two medical experts, Reuben Beezy, M.D., and Margaret Moore, Ph.D. Both Dr. Beezy and Dr. Moore reviewed plaintiff's medical record prior to testifying. Dr. Moore testified that plaintiff's mental impairments were not severe. Tr. 37-45. Dr. Beezy also testified that plaintiff retained the functional capacity to perform work at the sedentary level, with some restrictions. Tr. 40. The ALJ did not call a vocational expert at the hearing.

## II.     Plaintiff's Testimony

At the hearing before the ALJ, plaintiff testified that she last worked as a phlebotomist. She testified that she missed work due to pain, and needed to take extra breaks. She claimed that she could not perform even sedentary work due to her sleep problems. Plaintiff participated in a

sleep study around 2000 or earlier, but has not done so since. She stated that her depression affects her ability to function, and she has been taking Cymbalta since before 2003. Plaintiff also testified that she must take a 3-hour nap every day due to pain and fatigue.

### ALJ's Decision

The ALJ performed the sequential analysis. At step one, he found plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 4, 2011. Tr. 15. At step two, the ALJ concluded plaintiff suffered the following severe impairments: abdominal pain of unknown cause status post multiple abdominal surgeries; lower back pain with minimal findings on x-rays; mild neck and shoulder pain without accompanying objective findings; bilateral carpal tunnel syndrome vs. tendonitis by self-reported history; ganglion cyst on the right wrist; and basal cell carcinoma, resolved. Tr. 16.

At step three, the ALJ determined plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 21.

The ALJ next assessed plaintiff's residual functional capacity (RFC) and found that she retains the capacity to perform sedentary work with the following limitations: she can sit for 6 hours in an 8-hour day with the ability to change positions; she can occasionally climb stairs, but cannot climb ladders, ropes or scaffolds; and she can occasionally balance, stoop, kneel, crouch, and crawl. Tr. 21.

At step four, the ALJ found plaintiff is unable to perform any of her past relevant work. Tr. 25. At step five, the ALJ found that plaintiff retained the RFC to perform jobs that exist in significant numbers in the national economy. Tr. 25-26. The ALJ therefore concluded plaintiff was not disabled. Tr. 26.

/////

**Standard of Review**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." Bray v. Comm'r, 554 F.3d 1219, 1222 (9th Cir. 2009). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. See Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. Id.; see also Bray, 554 F.3d at 1226.

**Discussion**

Plaintiff argues the Commissioner erred by (1) improperly rejecting her testimony; (2) improperly evaluating the medical opinion evidence; (3) failing to call a Vocational Expert at hearing; and (4) failing to identify plaintiff's mental impairments as "severe" at step two.

**I.      Plaintiff's Testimony**

Plaintiff first argues that the ALJ erred by rejecting her subjective symptom testimony. The Ninth Circuit established two requirements for a claimant to present credible symptom

testimony: the claimant must produce objective medical evidence of an impairment or impairments; and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's testimony only if the ALJ provides clear and convincing reasons for doing so. Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). General assertions that the claimant's testimony is not credible are insufficient. Id. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

The ALJ rejected plaintiff's subjective symptom testimony to the extent that it conflicted with the RFC. Tr. 22-24. First, the ALJ found that plaintiff stopped working for reasons other than her impairments. Evidence that a claimant stopped working for reasons other than her impairments is a sufficient basis to disregard her testimony. Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001). Here, the record reveals that plaintiff was let go from her last job as a phlebotomist for abusing a coworker and compromising patient safety by mismanaging blood. Tr. 23, 47, 363. Plaintiff's disability report also indicates that she stopped working because she was fired, and not because of her symptoms and limitations. Tr. 243. The fact that plaintiff stopped working for reasons other than her impairments constitutes a clear and convincing reason and supports the ALJ's rejection of her testimony. Bruton, 268 F.3d at 828.

Second, the ALJ found that plaintiff's allegations of disabling pain were unsupported by medical evidence of record. Tr. 23. Minimal objective findings can undermine a claimant's

Page 9 – OPINION AND ORDER

credibility when, as here, other reasons for rejecting her testimony are present. Burch, 400 F.3d at 680-81. The ALJ found minimal evidence in the record to support plaintiff's alleged abdominal, musculoskeletal, hand, and wrist pain, despite plaintiff's contention that her pain and other symptoms were so severe as to prevent her from sustaining full-time work. Tr. 23. On examination, plaintiff's joints and other physical signs were normal, and x-rays were benign. Further, the record contains "no EMG/nerve conduction studies to support [plaintiff's] complaints." See Tr. 387, 401-02, 404, 407, 412-13, 420, 423, 426, 428, 430-31, 437, 439-40, 442, 459. The lack of objective medical evidence supporting plaintiff's complaints provides additional support for the ALJ's evaluation of her testimony. Burch, 400 F.3d at 680-81.

      As a third reason for rejecting plaintiff's testimony, the ALJ found that plaintiff's activities of daily living were inconsistent with her allegations regarding the nature and extent of her limitations. Tr. 23. The ALJ may reject a claimant's testimony when it is inconsistent with her level of daily activity. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Here, plaintiff testified that she actively searched and applied for both full- and part-time work during the relevant period, indicating that plaintiff believed she was capable of performing substantial gainful activity after her alleged onset date. Tr. 52. In early 2011, she reported to Dr. Shields that she was "motivated to work and ha[d] been searching for jobs," having "submitted 25-30 applications over the past three months." Tr. 23, 361. The record also reveals that plaintiff was independent in performing self-care and household chores; was able to cut brush, vacuum, and mow the lawn; took a two-week vacation to New Mexico; could occasionally drive to the coast with her husband; and regularly played with her grandchildren. Tr. 23, 62, 64-65, 364. On this record, it was reasonable for the ALJ to infer that plaintiff was not as limited as alleged in her

Page 10 – OPINION AND ORDER

testimony. Plaintiff's daily activities thus constitute further clear and convincing reason for the ALJ's rejection of plaintiff's testimony. Rollins, 261 F.3d at 857.

In sum, the ALJ's credibility evaluation was supported by legally sufficient reasons supported by substantial evidence in the record, and is therefore affirmed.

## II.   Medical Opinion Evidence of Dr. Beezy, Dr. Shields, and FNP Harrison

Plaintiff next argues that the ALJ erred in his evaluation of the medical evidence. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. Carmickle v. Comm'r, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester, 81 F.3d at 830. A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

### 1.  Dr. Beezy

Plaintiff argues that the ALJ improperly rejected Dr. Beezy's opinion regarding her upper extremity limitations, including her left shoulder limitations and her limitation to only occasional fingering. The ALJ gave Dr. Beezy's opinion "some weight," finding that his opinion that plaintiff could perform a wide range of sedentary work was supported by the overall medical record and was "well explained in his persuasive testimony." Tr. 24. The ALJ, however,

rejected Dr. Beezy's opinion that plaintiff could only occasionally engage in fingering or raising her left arm above should level. Id.

As an initial matter, Dr. Beezy's opinion was contradicted by the opinion of the State Agency physician Mary Ann Westfall, M.D., who found that plaintiff could perform a range of sedentary work and did not note any fingering or left arm restrictions. Tr. 112-13. The ALJ was therefore required to provide specific, legitimate reasons for rejecting Dr. Beezy's controverted opinion as to these limitations. Bayliss, 427 F.3d at 1216.

First, the ALJ found Dr. Beezy's opinion conflicted with the weight of the medical evidence in the record. The ALJ may assign less weight to a medical opinion that is inconsistent with the overall medical record. 20 C.F.R. § 404.1527(c)(4). Here, for example, the record contains no EMG/nerve conduction studies; no indications of positive Tinel's or Phalen's other than a mildly positive Tinel's test in 2009; and plaintiff received no treatment – even conservative – for wrist problems. Tr. 24. There are no x-rays and no indications of range of motion problems in plaintiff's shoulders or neck. Further, plaintiff testified that she did not have carpal tunnel syndrome but rather tendinitis, and there was no evidence supporting a carpal tunnel syndrome diagnosis within the relevant period. On this record, the ALJ provided a specific, legitimate reason for rejecting Dr. Beezy's opinion regarding plaintiff's fingering and range of motion limitations. 20 C.F.R. § 404.1527(c)(4).

## 2. FNP Harrison

Plaintiff also argues that the ALJ erred by rejecting the opinion of Nurse Harrison. She appears to argue that the ALJ erroneously rejected some fingering and exertional restrictions in her left arm as assessed by Dr. Beezy, but does not specifically identify limitations endorsed by Nurse Harrison that are alleged to be omitted from the RFC.

The ALJ gave only "some weight" to Nurse Harrison's opinion. Tr. 24. As a nurse practitioner, Mr. Harrison was an "other" medical source under the Regulations, and the ALJ was required to provide germane reasons for rejecting his opinion. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012); 20 C.F.R. § 404.1513(d)(1).

Here, the ALJ noted that Nurse Harrison's opinion was not supported by an accompanying physical examination, and that the limitations he assessed were not supported by the relatively benign medical findings. Tr. 24. He explained that Nurse Harrison's fine manipulation limitations were not supported by either physical examination or testing. The court finds these reasons germane to the evaluation of Mr. Harrison's opinion. The ALJ therefore provided legally sufficient reasons for rejecting part of Mr. Harrison's opinion. Molina, 674 F.3d at 1111.

### 3. Dr. Boyd

Plaintiff next argues that the ALJ improperly rejected Dr. Boyd's opinion regarding the severity of her mental limitations. The ALJ found that plaintiff's mental impairments were not as limiting as consultative physician Dr. Boyd found them to be, and credited instead the opinion of Dr. Moore, who reviewed the medical record and testified that plaintiff's mental impairments were not severe. The ALJ was therefore required to provide specific, legitimate reasons for rejecting Dr. Boyd's controverted medical opinion. Bayliss, 427 F.3d at 1216.

Here, the ALJ noted that Dr. Boyd, a consultative psychologist, rendered his opinion on May 3, 2011, without the benefit of the entire longitudinal record. The ALJ may disregard a medical opinion formulated outside of the relevant time period. Turner v. Comm'r, 613 F.3d 1217, 1224 (9th Cir. 2010). As noted above, the relevant period under review commenced on May 4, 2011. On this record, the ALJ was entitled to favor the opinion of Dr. Moore, rendered

on June 4, 2013, over the opinion of Dr. Boyd, which was rendered before commencement of the relevant period under review.  The ALJ provided legally sufficient reason to support his evaluation of evidence regarding plaintiff's mental impairments.

### 4.  Dr. Shields

Plaintiff also argues that the ALJ improperly rejected the opinion of examining psychologist Dr. Shields regarding the severity of her mental impairments.  Here, Dr. Shields's opinion was contradicted by the opinion of Dr. Moore, who found that plaintiff had no severe mental impairments.  The ALJ was therefore required to provide specific, legitimate reasons for rejecting Dr. Shields' controverted opinion.  Bayliss, 427 F.3d at 1216.

The ALJ provided two such reasons.  First, he noted that Dr. Shields's opinion was based in part upon plaintiff's subjective symptom testimony, which the ALJ properly found to be not credible.  Second, the ALJ found that Dr. Shields's opinion was inconsistent with his relatively normal mental status examination.  Tr. 20, 363-65.  A contradiction between a doctor's assessment and that doctor's clinical notes, observations, and opinions "is a clear and convincing reason for not relying on the doctor's opinion.  Bayliss, 427 F.3d at 1216.  On this record, the ALJ provided legally sufficient reasons for giving only partial weight to Dr. Shields's opinion.

In sum, the ALJ's evaluation of the medical evidence was supported by legally sufficient reasons and based on substantial evidence in the record.

### III.     Failure to call a Vocational Expert

As noted above, the ALJ assessed plaintiff's RFC and found that she could sit for 6 hours in an 8-hour workday with the ability to change positions.  Tr. 21.  Plaintiff appears to argue that "the ability to change positions" requires the ability to alternate between sitting and standing.  However, it is reasonable to interpret this caveat as requiring the ability to change sitting

positions, without requiring plaintiff to stand. It was thus reasonable for the ALJ to conclude that this limitation would have little or no effect on the occupational base of unskilled work, consistent with Agency policy. See SSR 83-12, available at 1983 WL 31253, at *2. The ALJ therefore was able to form a non-disability determination based on substantial evidence in the record without the need for a vocational expert's testimony.

Thus, while plaintiff's presents a reasonable alternative interpretation of the evidence in light of SSR 96-9p, the ALJ's inference that jobs involving the ability to sit for 6 hours will afford an individual the opportunity to change positions while sitting was reasonable. The court will not disturb the ALJ's rational conclusion. Burch, 400 F.3d at 679.

## IV.    Step Two Findings

Finally, plaintiff argues that the ALJ erred at step two by omitting her mental impairments from the list of "severe" impairments. At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments; step two findings must be based upon medical evidence. 20 C.F.R. § 404.1520(a). An impairment is "not severe" if it "does not significantly limit [the claimant's] ability to do basic work activities." Id. "Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." Harrison v. Astrue, 2011 WL 2619504, *7 (D. Or. July 1, 2011) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)).

Plaintiff argues that the ALJ was bound by res judicata to find that her mental impairments were "severe" at step two because the Commissioner previously found that plaintiff suffered from severe mental impairments in a written decision regarding a previous application for benefits. Plaintiff also argues that the ALJ improperly rejected Dr. Boyd's finding that plaintiff's mental impairments are severe. Tr. 77, 80-81. As discussed above, however, the ALJ

provided legally sufficient reason to support his evaluation of evidence regarding plaintiff's mental impairments.

The ALJ resolved step two in plaintiff's favor. Tr. 16. Thus any omission at step two was harmless unless the ALJ failed to consider the effect of the omitted limitation in assessing plaintiff's RFC. Here, the ALJ weighed the medical evidence and found that plaintiff's mental impairments were not severe, crediting the testimony of medical expert Dr. Moore. The ALJ explained his reliance on Dr. Moore's opinion, noting that Dr. Moore had the opportunity to consider the entire longitudinal record, whereas Dr. Boyd, also a consultative physician, rendered his opinion without the benefit of the entire record. The ALJ's evaluation of the medical evidence regarding plaintiff's mental impairments was reasonable.

Plaintiff also argues that the ALJ erred in crediting Dr. Moore's opinion over that of examining physician Dr. Shields, who assessed moderate to severe mental impairments. As discussed above, however, the ALJ provided legally sufficient reasons for his decision to give only some weight to Dr. Shields' controverted opinion. On this record, the ALJ's evaluation of the evidence of plaintiff's mental impairments was supported by substantial evidence.

## Conclusion

The Commissioner's decision is supported by substantial evidence in the record and should therefore be AFFIRMED.

IT IS SO ORDERED.

DATED this 13th day of December, 2016.

                                                  _____/s/ John Jelderks_____
                                                  John Jelderks
                                                  United States Magistrate Judge